UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CITY OF CHICAGO,

    Appellant,

  v.

ALAN S. KENNEDY,

    Appellee.

No. 17 CV 5945

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

The Chicago Municipal Code authorizes the city to impound vehicles upon the commission of certain offenses, such as driving without a license. Before 2016, if the city impounded a vehicle and the owner of that vehicle later filed bankruptcy, the city released the vehicle as required by the Bankruptcy Code. In 2016, however, the city amended the municipal code, adding a provision to give itself a possessory lien in any impounded vehicle. This has given the city a path around the bankruptcy protection afforded to debtors' property. The city has stopped releasing vehicles to debtors who file bankruptcy, arguing that its statutory possessory liens allow it to maintain possession without consequence from the bankruptcy court.

The city impounded Alan Kennedy's car and three months later, Kennedy filed for bankruptcy. The bankruptcy court ordered the city to turn over Kennedy's car. The city refused, concerned that without possession its lien would be lost entirely, and filed this appeal.[1]

---

[1] On appeal, a bankruptcy court's legal conclusions are examined de novo. *In re Marcus-Rehtmeyer*, 784 F.3d 430, 436 (7th Cir. 2015).

When the City of Chicago impounded his car, Alan Kennedy owed $7,171.80 in unpaid tickets. [6] at 4:16–5:1; [10-4] at 21.[2] Once a debtor's vehicle is impounded, the Chicago Municipal Code confers a possessory lien in the vehicle to the city. Chicago Municipal Code §§ 2-14-132(l), 9-92-080(f). About three months later, Kennedy filed for Chapter 13 bankruptcy. *See* [10] at 3. Kennedy's proposed bankruptcy plan of adjustment acknowledged the city's interest in his car and required that the "City of Chicago release 1999 Oldsmobile Delta upon confirmation of the plan as they are being paid the full secured value of the vehicle pursuant to 11 USC 506." [10-2] at 68. The city objected to the confirmation of the plan, arguing it failed to comply with 11 U.S.C. § 1325(a)(5), which requires a plan to provide that a lienholder retains its lien until the underlying debt is payed or discharged. [6] at 2:19–3:9; [10] at 4. The city argued its objection at the confirmation hearing, but the bankruptcy court ordered that the city release the vehicle. [6] at 2:19–3:9; 7:16–8:14. The order provides, "the City of Chicago shall release the Debtor's vehicle pursuant to Thompson v. GMAC 566 F.3d 699 (7th Cir. 2009)." [10-3] at 5. The court also stated that if the debtor did not get the car back the next day, it would consider sanctions against the city. [6] at 7:25–8:4.

The city filed notice of its appeal later that afternoon. [10-3] at 5. Due to the immediate threat of sanctions, the city also moved for a stay pending appeal from this court. *See* [3]. That motion was granted, and the city appealed the bankruptcy court's sua sponte order to release the vehicle.

---

[2] Bracketed numbers refer to entries on the district court docket.

2

**I.     The Automatic Stay**

Once a debtor files a bankruptcy petition, an automatic stay prevents creditors from committing "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Exercising control" includes passively holding onto an asset and refusing to return it. *Thompson v. General Motors Acceptance Corp.*, 566 F.3d 699, 702–03 (7th Cir. 2009). Therefore, a creditor who refuses to return an asset in which the debtor has some legal or equitable interest violates the automatic stay and may be sanctioned. 11 U.S.C. § 362(k). There are, however, exceptions to the automatic stay provision. Section 362(b)(3) provides, "[t]he filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay . . . of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title." Section 546(b), in turn, provides, "[t]he rights and powers of a trustee . . . are subject to any generally applicable law that . . . provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation." 11 U.S.C. § 546(b)(1)(B).

The city asserts that it has a possessory lien in Kennedy's car and that, as such, its interest falls within the exception to the automatic stay in § 362(b)(3).

3

Kennedy does not dispute that the city has a possessory lien in the vehicle, nor does he dispute that a possessory lien falls within the automatic stay exception.[3] Assuming the city has a valid possessory lien in the vehicle,[4] I agree that the city's possessory interest fulfills all of the requirements to qualify for the exemption to the automatic stay. The city had a prepetition interest in the vehicle and continued to possess the vehicle postpetition (continuing perfection of its interest). And under § 2-14-132(c)(2) and § 9-92-080(c) of the municipal code, a lienholder who acquired rights to the vehicle before it was impounded must pay the storage and towing fees to obtain possession of the vehicle, meaning that the city's interest is effective against someone who acquired a right in the property prior to the perfection. So as long as the municipal code provision that grants the city its possessory lien is a generally applicable law, the city's interest is exempt from the automatic stay.

Kennedy argues that the code provision is unconstitutional because it violates the due-process clause and is preempted by the bankruptcy code. As for due process, a predeprivation hearing is not required in every case. *Brown v. Brienen*, 722 F.2d 360, 365 (7th Cir. 1983). And courts have generally upheld the city's practice of immobilizing and impounding vehicles without a predeprivation hearing, provided there is adequate postdeprivation relief. *See, e.g., Gable v. City of Chicago*, 296 F.3d 531, 539–40 (7th Cir. 2002); *Grant v. City of Chicago*, 594 F.Supp. 1441,

---

[3] In other words, Kennedy does not defend the bankruptcy court's decision that the automatic stay is the source of the city's obligation to release the car.

[4] The validity of the city's statutory possessory lien, as a matter of state law, is a question presented in a separate appeal. *See City of Chicago v. Howard*, No. 18 CV 2753 (N.D. Ill.) (appeal from *In re Howard*, No. 17-bk-24141 (Bankr. N.D. Ill. Apr. 16, 2018). That question is not raised by the parties in this case and is outside the scope of this opinion.

1446–47 (N.D. Ill. 1984); *Elliott v. City of Chicago*, 1989 WL 84377, No. 88 C 3955, at *2 (N.D. Ill. July 18, 1989). Kennedy argues that the due-process violation here is distinguishable because the placing of the lien on the vehicle, not the physical taking of the property, is the deprivation—and that deprivation, according to Kennedy, requires a hearing before the lien is imposed. This distinction does not make a constitutional difference because the effect on Kennedy's private interest is the same. Under either version of the code, Kennedy would have lost the ability to use his car. He also could have demanded a hearing and, had he shown there was not probable cause for the impoundment, the city would have released his car at no cost, extinguishing its possessory lien. Chicago Municipal Code § 2-14-132(a)(1), (3). The city did not deprive Kennedy of his vehicle without due process of law.

Kennedy argues that the municipal code was passed to undermine the Bankruptcy Code and that because it conflicts with federal bankruptcy laws it must be struck down. The city used to release impounded vehicles when the owner filed for bankruptcy. Once the city amended the code, however, it began refusing to release vehicles. Because the city already had the ability to impound vehicles, the only logical explanation for granting itself an additional possessory lien, Kennedy points out, is to avoid having to release those vehicles during bankruptcy proceedings. Kennedy may be correct, but that does not mean that the municipal code conflicts with federal bankruptcy law. The Bankruptcy Code dictates how to allocate funds based on existing property interests, but state law defines those property interests. Changing the way a certain interest is defined may affect how

5

that interest fares in bankruptcy without undermining the Bankruptcy Code itself. *See In re Anchorage Int'l Inn, Inc.*, 718 F.2d 1446, 1451 (9th Cir. 1983); *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1403 (9th Cir. 1986); *Baines v. City of Chicago*, 2018 WL 1558557, 17-cv-4926, 17-cv-4929 at *2–3 (N.D. Ill. Mar. 22, 2018). Though Kennedy raises genuine concerns about the city's motives for amending the municipal code, there is no conflict—the municipal code operates within the bankruptcy regime.

The only question that remains, then, is whether the code is a generally applicable law. The possessory-lien provision applies both in and outside of bankruptcy, making it generally applicable. *See In re Corrin*, 849 F.3d 653, 657–58 (6th Cir. 2017); *In re Avila*, 566 B.R. 558, 560 n. 3 (Bankr. N.D. Ill. 2017). As a result, the city's possessory interest in Kennedy's vehicle meets the criteria for an exception to the automatic stay. This conclusion is consistent with *Thompson*. There, the creditor did not have a possessory lien in the vehicle and so its interest did not implicate the § 362(b)(3) exception. The bankruptcy court's reliance on *Thompson's* automatic-stay analysis under these circumstances was inappropriate, and the court erred in concluding that the city's continued possession of Kennedy's vehicle was a violation of the automatic stay.

## II.   Section 542 Turnover

Though the city is exempt from the automatic-stay provision, it may still be required to release Kennedy's vehicle under 11 U.S.C. § 542, which "grants to the estate a possessory interest in certain property of the debtor that was not held by

the debtor at the commencement of reorganization proceedings." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983). Section 542 provides, "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). Subject to certain limitations, § 363 allows the trustee, after notice and a hearing, to use, sell, or lease, property of the estate. 11 U.S.C. § 363(b)(1). And "at any time, on request of an entity that has an interest in the property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." *Id.* § 363(e).

The city argues that § 542 modifies only a creditor's procedural rights, and because ordering turnover of Kennedy's vehicle would destroy its substantive right (the possessory lien), the city argues § 542 does not apply. But the language of the Bankruptcy Code reveals that Congress contemplated this situation and decided that other provisions of the code would adequately protect, and therefore should replace, a creditor's possessory interests. *Whiting Pools*, 462 U.S. at 207 ("The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession."). In other words, a creditor "must look to [§ 363(e)] for protection, rather than to the nonbankruptcy remedy of possession." *Id.* at 204.

7

The distinction between possession as a procedural right and a substantive one is not sufficient to distinguish this case from the principles of *Whiting Pools* and § 542.[5] Requiring the city to release Kennedy's vehicle, provided that adequate safeguards are put in place, aligns not only with the text, but also with the purpose, of the Bankruptcy Code. "The primary goal of reorganization bankruptcy is to group *all* of the property, even the property lawfully seized pre-petition. . . . An asset actively used by a debtor serves a greater purpose to both the debtor and his creditors than an asset sitting idle on a creditor's lot." *Thompson*, 566 F.3d 699, 702 (7th Cir. 2009). The city is entitled to adequate protection of its interest, but it must also follow the procedures outlined in the Bankruptcy Code, including § 542.

The city's argument that because Kennedy did not have the right to possess his car when he filed for bankruptcy, the estate cannot possess it now is unpersuasive. In support of this argument the city relies on two cases that involved the question of whether a trustee could compel turnover of a debtor's retirement contributions, which the debtor herself could not have accessed at the time she filed for bankruptcy. *Matter of Lyons*, 957 F.2d 444 (7th Cir. 1992); *Matter of Sanders*, 969 F.2d 591 (7th Cir. 1992).[6] Kennedy's situation is distinguishable. Although he

---

[5] The Court referenced possession as a procedural right in *Whiting Pools*, and did not decide whether § 542(a) subjected all acts of possession to turnover. *Whiting Pools*, 462 U.S. at 206 & n.14. Nevertheless, the Court emphasized the broad scope of the bankruptcy estate, *see id.* at 205–06, and a possessory lien (e.g., an artisan's lien), while substantive, is in practice more like a procedural device used by a creditor to secure payment.

[6] The notion that a trustee cannot compel turnover of pension fund contributions because of the nature of the debtor's interest in those funds was abrogated by the simpler proposition that the contributions are not part of the bankruptcy estate. *Patterson v. Shumate*, 504 U.S. 753, 757–59 (1992).

8

did not possess his car when he filed bankruptcy, Kennedy had an interest in his car at the time of filing—it remained his car. Although his immediate possession was subject to contingencies imposed by his traffic violations, allowing the bankruptcy estate to take possession would not expand Kennedy's property rights.[7] The whole point of turnover proceedings is to allow the estate to obtain possession of property in which the debtor had an interest, but was not in his possession of at the time of filing. As a result, turnover could be appropriate.

Though the city may be required to produce Kennedy's car under § 542, "[a] turnover action is an adversary proceeding which must be commenced by a properly filed and served complaint." *Matter of Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990); Fed. R. Bank. P. 7001. The bankruptcy court did not follow this procedure. Instead, it raised the issue sua sponte and ordered turnover of the car without giving the city an opportunity to seek adequate protection of its rights, which could include, for example, restrictions on the debtor's use, lease, or sale of the vehicle to protect the city's interest. 11 U.S.C. § 363(e).

Because the city meets the criteria for an exception to the automatic stay, and because the bankruptcy court did not follow the correct procedures to order turnover of Kennedy's vehicle under § 542, the order is vacated. This case is remanded to ensure that the city has an opportunity to seek adequate protection of

---

[7] The debtors in *Lyons* and *Sanders* had no present interest in their pension fund contributions by operation of state law. *Matter of Lyons*, 957 F.2d at 445–46; *Matter of Sanders*, 969 F.2d at 593. The same is not true of Kennedy, who has an interest in his car—the city does not dispute that he owns it. Resolving the competing present interests in the car (the city's possessory lien vs. Kennedy's ownership) would be an appropriate function of turnover proceedings under § 542.

Case: 1:17-cv-08656 Document #: 60-1 Filed: 05/04/18 Page 10 of 15 PageID #:414
Case: 17-08656 Document 25 Filed 05/04/18 Entered 05/04/18 15:17:36 Desc
Memorandum Opinion and Order    Page 10 of 10

its interest in Kennedy's vehicle. It is possible that nothing short of retained possession will be adequate to protect the city's interest, because of the nature of possessory liens, but this is an issue that should be decided by the bankruptcy court in the first instance.[8]

ENTER:

*[signature]*

_____
Manish S. Shah
United States District Judge

Date:  5/4/2018

---

[8] The city and the debtor may, for example, reach an agreement to release the vehicle upon a modification of the Chapter 13 plan that allowed payment to the city as a secured creditor.

10